the courts, or give validity to a contract which an unrepealed statute declared to be illegal. Aside from this, there was no oath administered here.

This, then, is a contract made by a minor. Let us see whether it is sanctioned or prohibited by the acts of congress. The act of 1802 [2 Stat. 135] declares that no person under the age of twenty-one years shall be enlisted by any officer, or held in the service of the United States, without the consent of his parent, or guardian, or master, first had and obtained, if any he had. The act of January 20, 1813 [2 Stat. 791], provided that this consent should be first obtained in writing. And the act of December 10, 1814 [3 Stat. 146], repealed this section of the act of 1813, but left intact the act of 1802, which requires the previous consent, but does not require that it should be in writing. It therefore appears in plain Saxon, that the contract of enlistment with a minor, being prohibited by the statute, is not merely voidable, but absolutely void.

This question is not so novel as I thought when I commenced its investigation. It was, in some of its features, discussed before Mr. Justice Coulter, not only an able and learned judge, but a statesman of national reputation, whose long and brilliant career in the house of representatives made him familiar with the acts of the national legislature. In the case of Com. v. Fox, 7 Barr [7 Pa. St.] 338, he says: "The enlistment and holding of the minor, under the circumstances mentioned in the act, is against the law, and the officer who enlisted him is guilty of an offence for which he may be amerced by the government. A penalty inflicted by statute for an act. implies a prohibition of the act, so as to make a contract relating to it void. 1 Bin. 118. Here there is not only a penalty imposed, but the act is declared by the statute to be illegal. I will not say that congress may not declare the enlistment of minors to be lawful and valid, but they have not done so in relation to the army of the United States." But until congress interposes, we must take the law as we find it, and regard the claim which the law of God, of nature, of the state, and of the United States, gives the father to the services of his child until he arrives at the age of majority, and which renders the minor unable to make a valid contract.

It is further contended, that as he perpetrated a fraud, not only on the government, but the drafted soldier, he is bound. But Mr. Justice Story says, in [Tucker v. Moreland] 10 Pet. [35 U. S.] 77, this has never been held sufficient, for it would otherwise take away the very protection which the law intends to throw around him, to guard him from the effects of his folly, rashness and misconduct.

Lastly, it is objected that he is a deserter, and subject to military law. The return to this writ does not make him a deserter.

There can be no criminal desertion if the enlistment was illegal. It was a declaration, merely, of an intention not to be bound—a disclaimer of the contract which, under the act of congress, he had a right to make, in the absence of the consent of his parent or guardian. In the Case of Carlton, 7 Cow. 471, although the minor had represented to the officer enlisting him that he was over twenty-one years of age, and had no father or guardian, the court declared the contract and enlistment void, and discharged the soldier. And in the case in Barr [7 Pa. St.] referred to, Judge Coulter says: In the presence of an enemy, or in an enemy's country, even camp followers would probably be amenable to martial law; for if they were not, the safety of the army would be somewhat jeoparded by their desertion to the enemy. It could only be in that light that a person unlawfully enlisted, and held without authority of law, could be amenable to military punishment. But this is not a case of that kind. And although in that case the return showed that the minor was a deserter, and that like Turner here, had surrendered himself, the minor was discharged. However much we should like to see this young man expiate his offence by some reasonable punishment, the law of the case is clearly with him, and he is entitled to his discharge.

Theodore M. Turner is discharged from the custody of the provost marshal, upon payment to the United States marshal, for the use of David Klingsmith, the sum of one hundred and seventy-five dollars, and the costs of this writ.

[See Case No. 16,777.]

---

UNITED STATES v. WRIGHT. See Case No. 16,401.

UNITED STATES (WRIGHT v.). See Cases. Nos. 18,097–18,099.

---

## Case No. 16,779.

### UNITED STATES v. YEATON.

[2 Cranch, C. C. 73.] [1]

Circuit Court, District of Columbia. April Term, 1813.

#### NON-INTERCOURSE LAWS—FORFEITURES.

Upon the seizure and condemnation of a vessel for violation of the act of congress of the 28th of February, 1806 [2 Stat. 351], "to suspend the commercial intercourse between the United States and certain parts of the island of St. Domingo," the United States are interested only in one half of the forfeiture.

The schooner Betsey and Charlotte, owned by the defendant, was condemned and sold for trading to St. Domingo, contrary to the act of 28th February, 1806. 2 Stat. 351. The defendant became the purchaser at that sale.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

and gave his note for the purchase-money, upon which note the United States recovered judgment and issued execution. In the mean time the president of the United States remitted the forfeiture "as far forth as the United States were interested therein," and Mr. Jones, the district attorney, indorsed a memorandum upon the execution, that it was to be discharged by the payment of one half of the amount of the debt, and interest thereon and costs.

The defendant obtained a rule on the district attorney to show cause why the .execution should not be quashed.

C. Simms, for defendant, contended that the whole forfeiture accrued to the United States, and could only be recovered in the name of the United States, and therefore the whole was remitted. That the subsequent distribution of a moiety among the revenue officers. was a matter between them and·the United States. The whole forfeiture was under the control of the United States, until it was actually recovered, and, until recovered, the rights of the revenue officers did not accrue. The United States had a right to interpose and prevent the recovery.

THE COURT, however, was of opinion (nem. con.) that the United States were interested only in one half of the forfeiture, and that only one half was remitted.

---

## Case No. 16,780.

UNITED STATES v. YELLOW SUN.

[See Case No. 16,212.]

---

## Case No. 16,781.

UNITED STATES v. YORK STREET
FLAX SPINNING CO.

[17 Blatchf. 138; 8 Reporter, 551.] [1]

Circuit Court, S. D. New York. Aug. 28, 1879.

VIOLATION OF CUSTOMS LAWS — FORFEITURE OF VALUE.

Under section 1 of the act of March 3, 1863 (12 Stat. 737, 738; Rev. St. § 2864), forfeiting imported goods, or their value, to the United States, for fraud in the entry of the goods at the custom house, if a suit is brought for such value, such value is not limited to the sum which the defendant received for the identical goods entered, on their sale by him.

[Cited in U. S. v. Auffmordt, 19 Fed. 901.]

At law.

[Error to the district court of the United States for the Southern district of New York.]

C. P. L. Butler, Jr., Asst. Dist. Atty., and Sutherland Tenney, Asst. Dist. Atty., for plaintiffs in error.

Joseph H. Choate, for defendant in error.

---

1 [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission. 8 Reporter, 551, contains only a partial report.]

WAITE, Circuit Justice. This is a suit to recover the value of certain goods alleged to have been forfeited to the United States under section 1 of the act of March 3, 1863 (12 Stat. 737, 738; Rev. St. § 2864). This act provides, that, if an "owner, consignee, or agent of any goods, wares, or merchandise shall knowingly make, or attempt to make, an entry thereof by means of any false invoice, * * * said goods, wares and merchandise, or their value, shall be forfeited," &c. After the close of the testimony on the part of the government, the defendant asked the court to instruct the jury to bring in a verdict for the defendant, on the ground that none of the acts charged in the declaration as causes of forfeiture had been proven. This was denied, and the defendant then asked for a verdict because no proof had been made of the value of the goods, such value being the statutory basis of recovery. The court thereupon ruled, "that the value of the goods, which must be taken as the basis of recovery, was the sum which the defendant received for the identical goods covered by the entries and invoices in the suit, in this country, the goods having passed into consumption, which sum, in the hands of the defendant, represented the goods themselves," and then, on the evidence as it stood, directed a verdict for the defendant. [Case unreported.] Many requests to charge were presented on behalf of the government, which were refused, but, as they were intended to break the force of this ruling, it will not be necessary to refer to them in detail.

The entire testimony is not embraced in the bill of exceptions, and, under the ruling of the court upon the first motion for a verdict, I must assume, that, so far as the acts of forfeiture were concerned. there was evidence sufficient to make it obligatory on the court to submit the case to the jury. If, then, there is error in the ruling of the court on the second motion, I must reverse the judgment, notwithstanding any doubt I may have on the case as it is presented here, about the propriety of subjecting the defendant to another trial on the merits, since the act of June 22, 1874 (18 Stat. 186), has made actual intent to defraud an essential element of recovery. I must also assume that the evidence established the fact that the goods had gone into consumption, as that seems to have been one of the ingredients on which the court based its ruling.

The question, as it comes here for determination, is not whether the value of the goods at the time of importation, or when they were sold or entered into consumption, or when the suit was commenced. is the proper basis of recovery, but whether the government is bound to accept, under its election to take the value, what the fraudulent importer himself got for them when they passed out of his hands. I know it is settled, that. when provision is made by statute for "a forfeiture of goods or their value," the